U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 0 1 2016

TONY R. MOORE  CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

b

| | |
|---|---|
| LAWRENCE SAMUELS,<br>Petitioner | CIVIL ACTION NO. 1:15-CV-00111<br>SECTION "P" |
| VERSUS | |
| T.G. WERLICH, WARDEN,<br>Respondent | JUDGE DRELL<br>MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by pro se petitioner Lawrence Samuels ("Samuels") on January 16, 2015 (Doc. 1). Samuels is contesting his prison disciplinary conviction and loss of good-time credits following an incident which occurred while he was incarcerated in FCI-Big Spring in Big Spring, Texas. Samuels alleges he was denied due process at his disciplinary hearing.

Samuels alleges that, at his initial disciplinary hearing in FCI-Big Spring, he was found guilty and lost 27 days of good time, but the National Inmate Appeals Director granted his administrative appeal and remanded the case for rehearing (Doc. 1). Samuels further contends that, at his second hearing, held at FCI-Pollock in Pollock, Louisiana, he was denied due process when he was not allowed to present witnesses and was told the surveillance video of the incident was no longer available (Doc. 1). Samuels asks this Court to reverse his disciplinary conviction. Samuels is

incarcerated in the Federal Correctional Institution-Medium in Pollock, Louisiana ("FCI-Pollock").

Respondent answered the petition (Doc. 12), and Samuels filed a reply (Doc. 14). Samuels's habeas petition is now before the Court for disposition.

## Rule 8(a) Resolution

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the petitioner's claims, and the records before the Court provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 1(b) and Rule 8(a).

## Law and Analysis

Samuels contends his right to due process at his disciplinary hearing was violated when the prison officials refused to obtain and consider the videotape evidence that would have exonerated him, and when he was not permitted to present witnesses in his defense.

### 1. Facts and Evidence

Samuels alleges that, while he was imprisoned in the Federal Correctional Institution in Big Spring, Texas ("FCI-Big Spring") on April 15, 2013, he and another inmate ("Inmate Ray") attempted to enter the recreation area of the prison while Officer Daniel and Officer Wilson were guarding the entrance (Doc. 1). Samuels alleges that Officer Daniel ordered him to remove his sunglasses, Samuels asked him

2

where that was required by policy, and Daniel advised Samuels to comply with the order (Doc. 1). Samuels alleges that, according to Daniel's report, Samuels then leaned in and flinched as if he was going to punch Daniel with his right fist; Daniel further reported that Samuels was then escorted to the Lieutenant's office where he "acted out" and was moved to the Segregated Housing Unit ("SHU") (Doc. 1; Doc. 12-2, pp. 7-8/48). Daniel wrote Samuels up for threatening another with bodily harm and refusing an order (Doc. 1; Doc. 12-2, p. 11/48).

The evidence shows that, at his initial hearing before the Unit Disciplinary Committee ("UDC"), Samuels's case was referred to the DHO, Samuels was assigned Officer Rodriguez as his staff representative, he requested Inmate Ray, Inmate Richardson, and Officer Wilson as witnesses at his hearing, and he requested the surveillance video; Samuels alleges he also notified Officer Rodriguez that he wanted the surveillance video[1] (Doc. 12-2, pp. 11, 33/48). Samuels' case was investigated and his witnesses were interviewed (Doc. 12-2, pp. 31, 43/48).

At Samuels's first hearing before the Disciplinary Hearing Officer ("DHO"), on April 15, 2013 at FCI-Big Spring, Officer Wilson's written statement was considered, Inmate Ray testified, and Inmate Richardson was not called because he did not witness the incident (Doc. 12-2, p. 5/46). Samuels's and Officer Daniel's statements were also considered (Doc. 12-2, pp. 4, 7/48). Samuels alleges that Officer Rodriguez told Samuels he had not gotten the surveillance video, but that Officer Wilson's

---

[1] The Bureau of Prisons's inmate disciplinary hearing procedures are set forth in 28 C.F.R. §§ 541.7-541.8.

3

testimony should help Samuels; the DHO said he did not think it was necessary to review the video (Doc. 1). The DHO found that Samuels was guilty of threatening another (Officer Daniel) with bodily harm, but was not guilty of refusing to obey an order, and 27 days of good time were disallowed (Doc. 12-2, pp. 5-6/346).

Samuels's appeal was granted by the National Inmate Appeals Administrator and his case was remanded for rehearing due to procedural violations concerning the delays in his proceedings (Doc. 12-2, pp. 22, 24/48).

On rehearing, held on April 17, 2014 at FCI-Pollock, the DHO's initial report stated that he considered summaries of the 2013 testimony of Inmate Ray, Inmate Richardson, and Officer Wilson, and found Samuels guilty of threatening another person with bodily harm and refusing to obey an order; the DHO sanctioned Samuels to loss of 27 days good time (Doc. 12-2, pp. 26-28/48). The DHO issued a second report on June 18, 2014, explaining the summaries of the witnesses's testimonies that he considered at the second hearing, and explaining that the surveillance video was not available for the hearing because the incident took place over a year ago and the video had not been saved (Doc. 12-2, pp. 37-40/48).

## 2. Due Process

Samuels argues that the DHO (on rehearing) abused his discretion and violated Samuels's right to due process when he denied Samuels's requests to introduce the surveillance video into evidence and to call witnesses.

A petitioner may attack the manner in which his sentence is executed in the district court with jurisdiction over his custodian pursuant to 28 U.S.C. § 2241. See

4

United States v. Cleto, 956 F.2d 83, 84 (5th Cir. 1992). A challenge to the loss of good time credits is, in effect, a challenge to a prisoner's custody. When a prisoner attacks the fact or length of his confinement, the appropriate cause of action is a petition for habeas corpus. See Hernandez v. Spencer, 780 F.2d 504, 505 (5th Cir. 1986) (citing Jackson v. Torres, 720 F.2d 877, 879 (5th Cir. 1983)).

When an inmate faces a loss of a protected liberty interest through a disciplinary hearing, he is entitled to the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539, 554 (1974). See also, Brecht v. Abrahamson, 507 U.S. 619, 633–34 (1993); Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995), cert. den., 516 U.S. 1059 (1996). Due process is required for the disallowance of good conduct time credits. See Sandin v. Conner, 515 U.S. 472 (1995); see also, Neal v. Casterline, 114 (5th Cir. 2005). However, prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. See Neal, 129 Fed.Appx. at 114 (citing Wolff, 418 U.S. at 556). In the prison disciplinary hearing context, due process typically requires notice, an opportunity to call witnesses and present evidence, and that some evidence supports the ruling, but those requirements are flexible and must be balanced against legitimate penological interests. See Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000) (citing Wolff, 418 U.S. at 556); see also, Morgan v. Quarterman, 570 F.3d 663, 668 (5th Cir. 2009).

Where good time credits constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence. See Thompson v. Cockrell,

5

263 F.3d 423, 427 (5th Cir. 2001) (citing Superintendent, Massachusetts Correctional Inst., Walpole v. Hill, 472 U.S. 445, 447 (1985)). The Court is not required to examine the entire record, to assess independently the credibility of witnesses, or to weigh the evidence. See Walls, 408 Fed.Appx. at 860 (citing Hill, 472 U.S. at 455). Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision. See Walls v. Chapman, 408 Fed.Appx. 858 (5th Cir. 2011); Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001); Zapata v. Purdy, 204 F.3d 1116 (5th Cir. 1999), cert. den., 529 U.S. 1045 (2000). Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer. See Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001).

Samuels complains he was not allowed to present the surveillance video at his second disciplinary hearing, held at FCI-Pollock. In Arceneaux v. Pearson, 449 Fed.Appx. 396, 398 (5th Cir. 2011), the Fifth Circuit stated that the right to present documentary evidence is not an absolute requirement of due process in prison disciplinary hearings, but it is one of a set of flexible factors that the Supreme Court has identified as characteristic of fair hearings. The Fifth Circuit in Arceneaux went on to note that it had previously found prison hearings to be fair where inmates sought to introduce a surveillance video and were not permitted to do so. Prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. See Henson, 213 F.3d at 898 (5th Cir. 2000).

In Samuels' case, his staff representative failed to preserve and secure the video for his first hearing, instead relying on the statement by Officer Wilson to show

what occurred. When Samuels's case was remanded for rehearing, the DHO at the second hearing explained, in his second report, that the surveillance video was no longer available, but that he had the testimony given by Inmate Ray at the first hearing and the written statement provided by Officer Wilson, and stated that Samuels had failed to request the video at his first hearing. Samuels, of course, contends he requested the video at his first hearing.

Regardless of whether Samuels asked for the surveillance video at his first hearing or not, the video could no longer be produced by the time of the second hearing. Instead, Samuels had the benefit of the testimony of Inmate Ray and the statement by Officer Wilson given at the first hearing. Since they were eyewitnesses to the incident whose testimony was favorable to Samuels, the surveillance video would arguably have been cumulative. Therefore, Samuels' right to due process was not violated.[2]

Samuels also complains that he was not allowed to call Inmate Ray and Officer Wilson as witnesses at his second hearing. The DHO stated in his second report and his affidavit (Doc. 12-2, p. 1/48) that the witnesses were not called to testify because they had provided testimony or a written statement at the previous DHO hearing,

---

[2] Samuels cites Howard v. U.S. Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007), for the proposition that the DHO's refusal to review the surveillance video was not harmless error. However, Samuels's case is not comparable to Howards's case, because Samuels had two eyewitnesses to the entire incident, one of whom was an inmate, whereas Howard had two eyewitnesses (both corrections officers) to only part of his incident. Therefore, in Samuels's case, the video would have been cumulative evidence. Moreover, the surveillance video was still available in Howards's case, while it was no longer available in Samuels's case.

which were considered at the second DHO hearing. Since Samuels has not alleged that Officer Wilson's or Inmate Ray's testimony would have been different at the second hearing, he has not shown that he was denied due process when they did not testify in person at his second hearing.

Since Samuels has not carried his burden of proving he was denied due process at his second disciplinary hearing, Samuels's habeas petition should be denied.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that Samuels's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame

authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases (and other habeas cases, see Rule 1(b)) in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana on this 31st day of January 2016.

HON. JOSEPH H. L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE